**BOARD OF TRUSTEES OF JOHNSON COUNTY COMMUNITY COLLEGE, Plaintiff,**

v.

**NATIONAL GYPSUM COMPANY, Defendant.**

Civ. A. No. 88–2031–O.

United States District Court, D. Kansas.

March 27, 1990.

Steven E. Crick, Kenneth B. McClain, Steven P. Callahan, Humphrey, Farrington & McClain, P.C., Independence, Mo., Robert F. Lytle, Bennett, Lytle, Wetzler, Prairie Village, Kan., for plaintiff.

Gordon E. Wells, W. Joseph Hatley, Lathrop Koontz & Norquist, Overland Park, Kan., Thomas J. Wheatley, Thomas A. Ryan, Kansas City, Mo., Hoyle, Morris &

Kerr, Susan K. Herschel, Eric B. Henson, Lisa M. Salazar, Sean P. Wajert, Hoyle, Morris & Kerr, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court on plaintiff's motion for a new trial pursuant to Rule 59, Federal Rules of Civil Procedure. At trial, plaintiff, Board of Trustees of Johnson County Community College (College), sought to recover from defendant, National Gypsum Company (NGC), costs associated with removing an asbestos-containing plaster product (Sprayolite) from three college buildings, on theories of strict liability and negligence. Plaintiff also claimed damages for fraud by concealment. After the jury returned a verdict in favor of defendant NGC, plaintiff timely filed the instant motion alleging several trial errors and, additionally, that the verdict was against the overwhelming weight of the evidence.

### Standards

■ Whether or not to grant a new trial is committed to the sound discretion of the district court. *Ryder v. City of Topeka,* 814 F.2d 1412, 1424 (10th Cir.1987). In reviewing a motion for new trial, the district court should "exercise judgment in preference to the automatic reversal for 'error' and ignore errors that do not affect the essential fairness of the trial." *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 553, 104 S.Ct. 845, 848, 78 L.Ed.2d 663 (1984). A new trial may be granted if prejudicial error has occurred or if the verdict is against the weight of the evidence. *Anderson v. Phillips Petroleum Co.,* 861 F.2d 631, 637 (10th Cir.1988). In considering a motion for a new trial on the grounds of prejudicial error, the alleged trial court errors must be clearly erroneous, as well as prejudicial, and must have affected the substantial rights of the parties. *Tomson v. Stephan,* 705 F.Supp. 530, 533 (D.Kan.1989), *citing Rasmussen Drilling, Inc. v. Kerr–McGee Nuclear Corp.,* 571 F.2d 1144, 1148–49 (10th Cir.), *cert. denied,* 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978). A motion for a new trial on the grounds that the jury verdict is against the weight of the evidence normally involves a review of the facts presented at trial, and involves the discretion of the court. *Black v. Hieb's Enterprises, Inc.,* 805 F.2d 360, 363 (10th Cir.1986). The trial court must focus on whether the verdict is clearly, decidedly, or overwhelmingly against the weight of the evidence. *Id.*

### Weight of the Evidence

■ Plaintiff contends that the verdict was against the overwhelming weight of the evidence, since NGC failed to present evidence to rebut (1) the strict liability claim, specifically that the product Sprayolite was unreasonably dangerous and defective; (2) the strict liability and negligence claim on the issue of failure to warn; and (3) the fraud claim. We disagree. To rebut plaintiff's expert testimony that Sprayolite was unreasonably dangerous, NGC presented testimony of several experts. Dr. Hans Weill testified that to a reasonable degree of medical certainty there was no significant health risk to the students and staff at the college from in-place asbestos-containing acoustical plaster ceilings. Dr. Peter Elmes testified that people in buildings with the estimated airborne asbestos level found in the college are not at risk for asbestos-related disease. Dr. Morton Corn testified, based on evidence that the inhalation risk of asbestos-containing construction products installed in buildings was no greater than that found in outdoor air, that the Sprayolite was not unreasonably dangerous.

■ Similarly, with respect to the failure to warn claim, NGC presented expert evidence through Drs. Weill, Corn and Elmes, as well as through Russell Ward, from which reasonable minds could have concluded that in 1971 and 1972, when the Sprayolite product was installed at the college, NGC neither knew, nor reasonably should have known, about the alleged dangers to occupants and maintenance personnel of exposure to in-place asbestos-containing acoustical tile. Finally, NGC's expert evidence also clearly rebutted plain-

tiff's claim of fraudulent concealment based on NGC's failure to warn plaintiff that Sprayolite contained asbestos, and the failure to supply caution labels informing plaintiff of the risk posed to building occupants and maintenance personnel. Since NGC's expert testimony supported the inference that, at the time NGC sold the Sprayolite to the college, no reasonable manufacturer could have been aware that the product posed a risk, it also supported an inference that NGC did not intentionally conceal information to plaintiff's detriment.

In sum, both sides presented eminently qualified experts whose opinions on the key issues in the case conflicted sharply. Under such circumstances, the jury alone has the power to weigh that evidence and assess the credibility of witnesses. *See Rodgers v. Hyatt*, 697 F.2d 899, 905 (10th Cir.1983). Since this was a case in which the jury could have reached different decisions based on its view of the evidence, we cannot find that the decision they reached is clearly without support.[1]

*Juror Misconduct*

■ Plaintiff's next claims that it is entitled to a new trial on the ground of juror misconduct or, in the alternative, to a hearing to investigate the extent of the alleged misconduct. Specifically, plaintiff alleges it was substantially prejudiced by the failure of a juror, Rowena Barber, to acknowledge during voir dire that she had been named as a defendant in previous litigation. During voir dire, the court posed the following question to the jury panel:

Have you ever had a claim made against you by someone else, whereby they claim that because of something that you did do or failed to do, that you were, that they were injured, and therefore they could recover money damages from you. Where you have been in the place of a defendant, so to speak, if the case went to a lawsuit stage?

Anyone had that experience, or do you have a close member of your family who

has ever been in that situation where someone has made a claim against them?

The record reveals no response to this question; however, following the trial, plaintiff apparently learned that juror Rowena Barber, a former nurse, had been a defendant in a medical malpractice lawsuit in 1980, which was settled in 1982 without any contribution by Barber.[2]

The Supreme Court has held that in order to obtain a new trial on the basis of juror misconduct during voir dire, "a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984). Relying on a pre-Greenwood case, *Consolidated Gas & Equipment Co. of America v. Carver*, 257 F.2d 111 (10th Cir.1958) and two later cases, *Hard v. Burlington Northern R.R.*, 812 F.2d 482 (9th Cir.1987), and *Baca v. Sullivan*, 821 F.2d 1480 (10th Cir.1987), plaintiff asserts that juror Barber's conduct during voir dire satisfies both prongs of the *Greenwood* test, thereby entitling plaintiff to a new trial. We disagree and believe that plaintiff's reliance on these three cases is misplaced. Notably, even if we were to conclude that juror Barber's response to the voir dire question had not been honest or truthful, plaintiff has presented nothing to show that a correct response would have provided a valid basis for challenge for cause.

Generally, a challenge for cause is narrowly confined to instances in which threats to impartiality are admitted or presumed from the relationships, pecuniary interests, or clear biases of a prospective juror. *See Darbin v. Nourse*, 664 F.2d 1109, 1113 (9th Cir.1981). Here, plaintiff cannot show a presumption of bias from Barber's involvement in a dissimilar law-

---

1. Because the court finds the jury verdict of no liability on any of the plaintiff's theories sufficiently supported by the evidence, there is no need to reach the quetion of whether sufficient evidence supported plaintiff's alleged damages.

2. The record does not reveal the manner in which plaintiff acquired this information regarding juror Barber.

suit remote in time to the present controversy and which ended in settlement without her contribution. In fact, plaintiff appears to concede this point by stating, "even though juror Barber's past involvement in litigation might not have resulted in her discharge for cause *per se*, her failure to disclose this information deprived this Court and the litigants of the right to pursue further inquiry." (Memorandum in support, p. 19).

We also conclude that the facts of this case fall short of requiring the court to hold an evidentiary hearing on Barber's alleged misconduct. While we agree that generally the remedy for allegations of juror partiality is a hearing in which the litigant has the opportunity to prove actual bias, whether to hold such a hearing is within the discretion of the court. In making this determination, the court is to be guided by the "content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source." *Hard v. Burlington Northern R.R.*, supra, 812 F.2d at 485.

Applying these factors to the present case, we find that the seriousness of the alleged misconduct does not rise to the level of the juror misconduct at issue in the other cases cited by plaintiff. While it was clearly appropriate to hold an evidentiary hearing in *Consolidated Gas* (where the misconduct involved a juror's failure to disclose involvement as a plaintiff in a similar personal injury suit then pending in another court); in *Hard* (where a juror failed to disclose that both he and his father had been former employees of defendant); and in *Baca* (a criminal case, where the juror failed to disclose that his brother had been a police officer for thirty years in the same city where the alleged crime occurred), Barber's minimal involvement in a lawsuit nearly ten years removed from the present case presents no such compelling facts. Accordingly, the court denies plaintiff's motion for a new trial or for an evidentiary hearing on the grounds of juror misconduct.[3]

*Prejudicial Error*

■ Plaintiff contends it is entitled to a new trial because the trial court erred in improperly instructing the jury. First, plaintiff disputes the court's refusal to give plaintiff's requested instruction no. 24 which read:

You may find that a warning is inadequate and unreasonable even where the existence of a "risk," i.e. a causal relationship between use of the product and the resulting injury, has not definitely been established. Where scientific or medical evidence exists tending to show that a certain danger is associated with use of the product, the manufacturer may not ignore or discount that information in drafting its warning solely because it finds it to be unconvincing.

The court's refusal to give instruction no. 24 was based on the conclusion that it imposed a greater burden on defendant manufacturer's duty to warn than required by Kansas law. Plaintiff's source for the above instruction is language from an Ohio case quoted with approval in a recent Kansas case, *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, 681 P.2d 1038, 1054, *cert. denied* 469 U.S. 965, 105 S.Ct. 365, 83 L.Ed.2d 301 (1984), *quoting Seley v. G.D. Searle & Co.*, 67 Ohio St.2d 192, 423 N.E.2d 831 (1981). However, as the court noted at trial, in light of conflicting Ohio cases, the Sixth Circuit has limited the use of this instruction to cases involving drugs and other products incapable of being made safe for their intended and ordinary use, and the Tenth Circuit has implicitly approved this limitation. *See generally Menne v. Celotex Corp.*, 861 F.2d 1453, 1472–73, n. 35 (10th Cir.1988). Accordingly, the court remains convinced that the proposed instruction would have been inappropriate.

■ The court also declines to grant plaintiff a new trial on the basis of alleged error in the failure to give plaintiff's proposed instruction no. 25, the "missing witness" instruction, which sets forth the ele-

**3.** Additionally, the court rejects plaintiff's contention that the fact that juror Barber's husband sat with the defendants during deliberations and had lunch with his wife on the day the verdict was rendered supports plaintiff's allegation of bias on the part of Barber.

ments required for an adverse finding based on failure to produce a witness. Initially, it is within the trial court's discretion to determine whether or not to give the missing witness instruction. *United States v. Sutton,* 732 F.2d 1483, 1492 (10th Cir.1984), *cert. denied,* 469 U.S. 1157, 105 S.Ct. 903, 83 L.Ed.2d 919 (1985). Four factors must be present before a jury can be instructed to infer that a missing witness would have testified adversely to a party: (1) the party must have the power to produce the witness; (2) the witness must not be one who would ordinarily be expected to be biased against the party; (3) the witness's testimony must not be "comparatively unimportant, or cumulative, or inferior to what is already utilized" in the trial; and (4) the witness must not be equally available to testify for either side. *United States v. Sutton, supra,* 732 F.2d at 1492.

Applying these factors to NGC's failure to call its president and certain retired employees, the court remains convinced that the proffered instruction was properly declined, based on plaintiff's failure to satisfy factors (3) and (4). Further, given the fact that the court allowed *both sides* to argue the missing witness issue in closing argument, the court rejects plaintiff's argument that it was substantially prejudiced by that portion of defendant's closing argument, in which NGC referred to plaintiff's failure to call the college's president and another witness.

 Finally, the court disagrees with plaintiff that prejudicial error was committed when the court allowed publication during trial of an interrogatory answer in which plaintiff stated that some of the product installed in its buildings had been manufactured by United States Gypsum. Although plaintiff argues that this answer had been "superseded and corrected," and asserts error on the basis of admission of "false evidence," the record reflects no evidence of correction of the interrogatory answer, nor did plaintiff present evidence to show that the answer was the result of an attorney's error, as claimed by plaintiff's counsel at the bench. Clearly, the answer was relevant to other evidence in the case which raised the question of whether all the asbestos-containing product was manufactured by defendant and was properly admitted. Fed.R.Evid. 403.

In sum, the court has carefully reviewed plaintiff's claimed errors and has found none to be prejudicial, clearly erroneous or to have affected the substantial rights of the parties. The court concludes that plaintiff received, if not a perfect trial, a fair one. *See McDonough Power Equipment, Inc. v. Greenwood, supra,* 464 U.S. at 553, 104 S.Ct. at 848.

IT IS THEREFORE ORDERED that plaintiff's motion for a new trial is denied.