**Barbara WARDRIP, Plaintiff,**

v.

**Dillis HART, Defendant.**

**No. 94–1058–JTR.**

United States District Court, D. Kansas.

July 30, 1996.

Dan E. Turner, Turner & Turner, Topeka, KS, for Barbara Wardrip.

John L. Carmichael, Wilson, Lee & Gurney, Wichita, KS, Randall H. Elam, Wichita, KS, for Dillis L. Hart.

## ORDER

REID, United States Magistrate Judge.

Following a trial in this case, defendant filed a motion for a new trial, judgment notwithstanding the verdict, and/or remittitur (Doc. 178). After that motion had been fully briefed, this court issued an order requiring that the parties further brief certain issues. Those matters have now been fully briefed by the parties.

The standards for granting a new trial are well set forth in *Board of Trustees of Johnson County Community College v. National Gypsum Co.,* 733 F.Supp. 1413, 1415 (D.Kan. 1990); *Tomson v. Stephan,* 705 F.Supp. 530, 533 (D.Kan.1989). Those standards are incorporated into this opinion.

However, a verdict which is excessive, but which is not the result of passion, prejudice, or another improper cause does not necessitate a new trial. When the jury errs only as to its assessment of damages, it is proper to condition the denial of a new trial on the plaintiff's acceptance of a remittitur. *Mason v. Texaco, Inc.,* 948 F.2d 1546, 1560 (10th Cir.1991), *cert. denied,* 504 U.S. 910, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992): *Arnold v. Riddell, Inc.,* 882 F.Supp. 979, 995 (D.Kan.1995).

In reviewing a motion for judgment as a matter of law, the court must review the evidence in the light most favorable to the verdict holder and is not permitted to weigh the evidence or make credibility determinations. *Richter v. Limax International, Inc.,* 45 F.3d 1464, 1470 (10th Cir.1995). Judgment as a matter of law is appropriate only if the evidence, when viewed in the light most favorable to the nonmoving party, points but one way and is susceptible to no reasonable inferences supporting the nonmoving party. *Riggs v. Scrivner, Inc.,* 927 F.2d 1146, 1149 (10th Cir.), *cert. denied,* 502 U.S. 867, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991). A judg-

ment as a matter of law rendered after a verdict has been entered is appropriate only when reasonable minds could not possibly differ as to an issue's necessary outcome. *Richter*, 45 F.3d at 1470.

Defendant first alleges error in allowing the claim of punitive damages to go to the jury. Punitive damages may be awarded whenever the elements of fraud, malice, gross negligence, or oppression mingle in the controversy. Punitive damages are awarded to punish the wrongdoer for his malicious, vindictive, or willful and wanton invasion of another's rights. *Wisker v. Hart*, 244 Kan. 36, 41, 766 P.2d 168 (1988). In this case, plaintiff alleged that defendant acted in a wanton manner. The court instructed the jury pursuant to PIK (Kansas) 2d 9.44 (1995 Supp.). The court further instructed the jury on the definition of wanton, relying on PIK (Kansas) 3.02, with additional language including acts of omission as wanton acts based on *Cerretti v. Flint Hills Rural Electric Cooperative Association*, 251 Kan. 347, 368–69, 837 P.2d 330 (1992) and *Gould v. Taco Bell*, 239 Kan. 564, 572, 722 P.2d 511 (1986). The court finds that the testimony of Dr. Struhl was sufficient to allow the jury to determine by clear and convincing evidence that the defendant acted in a wanton manner towards the plaintiff when he injected absolute alcohol into her foot. The court finds that the jury verdict that plaintiff is entitled to punitive damages is not against the weight of the evidence.

Defendant next argues that the jury award of $300,000 for economic loss (i.e., lost income) is not supported by the evidence, and that defendant is therefore entitled to either a remittitur, a new trial, or judgment as a matter of law. The evidence clearly demonstrated that the plaintiff is disabled because of the injury to her feet and is unable to work. Defendant does not dispute that she is disabled. Defendant's contention is that the evidence does not support past and future lost income of $300,000.

During the trial, plaintiff testified that she had applied for a job as a baker in Houston, Texas, for which she was qualified, but could not perform due to her injuries. The salary for this job was $9.00 an hour. The annual income of a person making $9.00 an hour, working full-time, would be $18,720. At the time of trial, plaintiff was 55 years of age; at the time of her injury, she was about 52 years of age. Assuming employment at this salary for 15 years, from age 55 to age 70, her income over that time would be $280,-800. Assuming employment at this salary for 18 years, from age 52 to age 70, her income would be $336,960. The jury is certainly not bound by her social security reported earnings in past years, as defendant argues. Even utilizing her year of greatest reported earnings, $11,200 in 1984 as a basis, that annual salary for her remaining life expectancy (27 years) would total $302,400.[1] A $300,000 figure for lost income amounts to approximately $16,667 a year for 18 years. This figure is a reasonable figure for the plaintiff, who admittedly had few job skills. Evidence did exist in the record from which the jury could have reasonably concluded that her lost income, past and future, due to her injuries, was $300,000.

Defendant also argues that the jury award of $300,000 for past and future medical expenses is not supported by the evidence. Plaintiff's past medical bills were $52,138.74 (Plaintiff's exhibit 118). This amount was not disputed. The question is whether there was sufficient evidence from which a jury could have determined that future medical expenses, in addition to her past medical expenses, would total $300,000.

As a preliminary matter, defendant argues that the testimony of Dr. Talmage in regards to future medical treatment is not based on reasonable medical probability. Medical opinion testimony should be based on reasonable medical probabilities. *Nunez v. Wilson*, 211 Kan. 443, 448, 507 P.2d 329 (1973). Dr. Talmage clearly testifies that the treatment he recommends, based on reason-

---

1. Defendant, in their brief, calculated her lost income based on her average income of $1,268, for 27 years (Doc. 178 at 4). However, it is certainly reasonable for the jury to utilize her maximum prior income as a figure to determine lost income since her injury in 1992. Defense counsel also indicated that plaintiff had testified that she was earning $1200 a month ($14,400 a year) when she was in Arizona (Doc. 193 at 4). At this salary, her past and future lost income would exceed $300,000 based on employment for 21 years.

able medical probabilities, will be effective in alleviating her pain (Talmage transcript, attached as part of Doc. 192 at 33, 58–59, 63), but not her physical disability (Talmage transcript at 33–34, 42).

Dr. Talmage first recommended a spinal cord stimulation for plaintiff to alleviate pain (T. transcript at 31). He estimated the cost of implantation of the device at $27,000 (T. transcript at 38). If the stimulation is effective, then the pulse generator will need to be replaced every three to five years, at a cost of $12,000 each time. With a life expectancy of 27 years, the generator may reasonably have to be replaced 9 times, for a total cost of $108,000. Dr. Talmage also testified that plaintiff would have to make up to six office visits a year, at a cost of $150 a visit. Over a 27 year period, this would add up to $24,300.

If the spinal cord stimulation is not effective, then Dr. Talmage would recommend intrathecal opiates, i.e., injecting pain medicine directly into the spinal fluid (T. transcript at 59). This requires implantation of a pump and a catheter. The cost of this procedure is $28,000 (T. transcript at 61). He noted the increased effectiveness in using a combination of the two procedures for pain relief (T. transcript at 62–63).

Finally, Dr. Talmage testified, in response to questioning from defense counsel, that if plaintiff did not respond to either the spinal cord stimulator or the intrathecal opiates, then further pain medication would need to be prescribed. The cost of pain medication could be as high as $700 per month (T. transcript at 84). In the absence of the treatment prescribed above, further pain medication would be needed as well (T. transcript at 84–85). Pain medication at this monthly price for 27 years would total $226,800. Based on the testimony of Dr. Talmage, future medical expenses could total as follows:

| | | |
|---|---|---|
| 1. | spinal cord stimulation implantation | $ 27,000 |
| 2. | pulse generator replacement | $108,000 |
| 3. | office visits | $ 24,300 |
| 4. | intrathecal opiates implantation | $ 28,000 |
| | SUB–TOTAL | $187,300 |
| 5. | pain medication (in lieu of or in addition to above) | $226,800 |
| | TOTAL FUTURE MEDICAL EXPENSES | $414,100 |
| | PAST MEDICAL EXPENSES | $ 52,138.74 |
| | GRAND TOTAL | $466,238.74 |

The court therefore finds that the jury verdict of $300,000 for past and future medical expenses is clearly supported by the evidence.

The final issue before the court concerns the jury award of $300,000 for noneconomic damages. Under K.S.A. 60–19a02, noneconomic damages are capped at $250,000. The statute states that when the award for noneconomic damages exceeds the statutory cap, the court shall enter judgment for $250,000. In their brief, plaintiff argued that the Americans With Disabilities Act supersedes K.S.A. 60–19a02. However, plaintiff failed to point to any basis in the statute or case law in support of their position. On February 15, 1996, the court directed plaintiff to brief the issue further. Plaintiff's brief of March 12, 1966 still failed to provide any basis in support of their position other than to say that because plaintiff is disabled under the federal statute, she should not be subject to the limitations on noneconomic damages. In the case of *Patton v. TIC United Corp.*, 77 F.3d 1235, 1245–1247 (10th Cir.1996), the 10th Circuit held that K.S.A. 60–19a02 is not superseded by the ADA, nor does it violate the Equal Protection Clause. Plaintiff's position is clearly without merit. The noneconomic damages award will be reduced to $250,000 pursuant to K.S.A. 60–19a02.

IT IS THEREFORE ORDERED that defendant's motion for a new trial, judgment as a matter of law, and/or remittitur (Doc. 178) is denied.

IT IS FURTHER ORDERED that, pursuant, to K.S.A. 60–19a02, the court will reduce the jury award of $300,000 for noneconomic damages, and enter judgment on this element of damages for $250,000.

The next motion before the court is plaintiff's motion in limine or motion to compel (Doc. 194–195). Defendant has filed a response brief (Doc. 196–197), and plaintiff filed a reply brief (Doc. 198).

On January 16, 1996, the plaintiff submitted to the defendant a request for

production of documents. That request sought defendant's tax returns from 1987–present, and all financial records, listing assets and liabilities, from 1992 to the present. On March 19, 1996, a deposition duces tecum was issued to the defendant requesting the same documentation. The deposition was held on April 11, 1996. Defendant produced his tax returns from 1988–1994, but did not produce any other financial records. Defendant's position is that defendant's accountant has defendant's financial records, and that discovery requests need to be directed to the accountant (Doc. 196 at 3). Defendant then states that they are in the process of collecting the additional documentation requested by plaintiff, and that they will be supplied to the plaintiff (Doc. 197 at 4).

Fed.R.Civ.P. 34(a) requires a party to produce relevant documents and other physical items which are in the possession, custody or control of the party upon whom the request is served. Courts have universally held that documents are deemed to be within the possession, custody or control if the party has actual possession, custody or control or has the legal right to obtain the documents on demand. *National Union Fire Insurance Co. v. Midland Bancor, Inc.,* 159 F.R.D. 562, 566 (D.Kan.1994). Financial records of the defendant in the possession of defendant's accountant are documents which defendant has the legal right to obtain. Therefore, defendant should have produced the financial records of defendant's accountant upon receipt of the request for production and the deposition notice. Plaintiff does not have to seek those documents from the accountant. Defendant shall produce all financial records of the defendant in the possession of his accountant, if they have not already been produced, by August 12, 1996. Plaintiff will be permitted to depose plaintiff's accountant no later than September 10, 1996, at a time agreeable with all parties. However, plaintiff has not demonstrated why the costs of the accountant's deposition should be assessed against the defendant. In addition, plaintiff must bear the reasonable costs for copying the relevant financial records. On the other hand, the court will show cause defendant as to why he and/or his counsel should not bear the expenses associated with the filing of this motion.

IT IS THEREFORE ORDERED that the motion to compel (Doc. 194) is granted, as set forth above.

IT IS FURTHER ORDERED that defendant shall show cause, in writing and filed with the court by August 15, 1996, why this court should not impose the expenses incurred in filing this motion, pursuant to Fed. R.Civ.P. 37(a)(4)(A). Plaintiff may file a response to defendant's pleading by August 30, 1996.

The final issue remaining is to set a date for a hearing to determine the amount of punitive damages, pursuant to K.S.A. 60–3702. The court will contact counsel by telephone on Wednesday, August 14, 1996 at 10:00 a.m. in order to set a date and time for that hearing.

IT IS THEREFORE ORDERED that the court will have a telephone conference with counsel on August 14, 1996 at 10:00 a.m. to set a date and time for the hearing on the punitive damages claim.