Dea RICHTER, Plaintiff,

v.

LIMAX INTERNATIONAL, INC., et al., Defendants.

No. 91–2065–JWL.

United States District Court, D. Kansas.

May 7, 1993.

**1520**

Michael E. Callen, Callen, Sexton & Shelor, Kansas City, KS, Richard D. Fry, William H. Pickett, William H. Pickett, P.C., Steve A. Matalone, II, Christopher R. Williams, Walker & Williams, Paula A. Weaver, Kansas City, MO, for plaintiff.

Richard T. Merker, Michael P. Oliver, Timothy J. Mudd, Wallace, Saunders, Austin, Brown & Enochs, Overland Park, KS, Rodney K. Murrow, Martin, Churchill, Overman, Hill & Cole, Chartered, Wichita, KS, for defendants.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This matter comes before the court on the defendants' renewed motion for judgment as a matter of law, or in the alternative, motion for a new trial (Doc. # 148). For the reasons set forth below, the motion for judgment as a matter of law is granted and the motion for a new trial is denied as moot.

The determinative issue in this motion is which of the following views the Kansas courts[1] would hold concerning a manufacturer's duty to warn about dangers from the foreseeable use of its products: (1) the manufacturer has a duty to warn of dangers from the foreseeable use of its products which the manufacturer actually knows or are known in the state of the art, i.e. reported in literature, known by experts, etc. or (2) the manufacturer has a duty to warn of dangers from the foreseeable use of its products which the manufacturer actually knows or are known in the state of the art *or could reasonably be discovered by the manufacturer by testing the product for dangers which might result from foreseeable uses.* This is a close issue on which Kansas law is unclear. Either view is logical and potentially defensible on legal and policy grounds. The court, for the reasons set forth below, takes a restrictive view and finds that Kansas courts would hold that a manufacturer only has a duty to warn of dangers which it knows or are known in the state of the art. Because that appears to be the extent of the existing obligation imposed by Kansas, any extension, if one is to be made, should be by a court other than one at this level, in which the policy ramifications of either result can be fully aired.

### I. Introduction

In the jury trial in this case, which ended on February 24, 1993, the jury found that plaintiff Dea Richter sustained stress fractures in her lower legs resulting from the use of a mini-trampoline which was manufactured and distributed by the defendants (designated together as "Limax"). The jury rejected the plaintiff's claims of improper design and inadequate instructions but held Limax liable for failing to warn the plaintiff of the danger of developing stress fractures when jogging on their mini-trampoline and awarded the plaintiff $293,081.44 in damages.

---

1. Under *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), this court is bound in this diversity action by the choice of law provisions of the forum state of Kansas. Kansas applies the rule of *lex loci delicti* to the choice of law for tort claims. *Brown v. Kleen Kut Mfg. Co.,* 238 Kan. 642, 714 P.2d 942, 245 (1986). "Under this rule, the law of the state where the tort occurred is applied to the substantive rights of the parties." *Id.* Therefore, Kansas law applies to the plaintiff's claim because the plaintiff was injured when using the defendants' mini-trampoline in Kansas.

The defendants challenge this verdict by a motion for judgment as a matter of law, or in the alternative, by a motion for a new trial. The defendants made a motion for judgment as a matter of law at the close of all the evidence and thus have preserved the issues raised in this renewed motion for judgment as a matter of law. At trial, the court denied all aspects of the defendants' Rule 50 motion except the contention that there was insufficient evidence to sustain a verdict that the defendants breached a duty to the plaintiff to warn her of potential injury from stress fractures from jogging on their mini-trampoline. This point, which was never raised or briefed in any fashion before trial, was taken under advisement by the court.

## II. Standard for Judgment as a Matter of Law

Judgment as a matter of law is appropriate under Rule 50(b) of the Federal Rules of Civil Procedure "only if the evidence, viewed in the light most favorable to the nonmoving party, points but one way and is susceptible to no reasonable inferences supporting the nonmoving party." *Riggs v. Scrivner, Inc.*, 927 F.2d 1146, 1149 (10th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991). Judgment as a matter of law is only proper when "the evidence so strongly supports an issue that reasonable minds could not differ." *Ryder v. City of Topeka*, 814 F.2d 1412, 1418 (10 Cir.1987). This is the same standard as that used for judgment n.o.v. "Judgment n.o.v. should be cautiously and sparingly granted." *Lucas v. Dover Corp.*, 857 F.2d 1397, 1400 (10th Cir. 1988). "In determining whether the grant of a motion for judgment n.o.v. is appropriate, the court must view the evidence and indulge all inferences in favor of the party opposing the motion and cannot weigh the evidence, consider the credibility of witnesses or substitute its judgment for that of the jury." *Id.* In order to deny judgment as matter of law, however, the court must find more than merely "a scintilla of evidence" favoring the nonmovant, the court must find that "evidence was before the jury upon which it could properly find against the movant." *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1547 (10th Cir.1988).

## III. Discussion of Judgment as a Matter of Law

The court grants the defendants' motion for judgment as a matter of law because the plaintiff did not present any evidence that would suggest that the defendants, or anyone in the world, for that matter, actually knew at any time prior to this lawsuit that a mini-trampoline could cause stress fractures to a user's lower legs when that user uses the mini-trampoline for an extended period. As will be discussed later, this court finds that Kansas courts would limit a manufacturer's duty to warn to those dangers about which the manufacturer actually knew or of which the manufacturer could learn by reasonably studying the state of the art of knowledge. This court finds that Kansas courts would not extend the duty to warn to those dangers about which a manufacturer could only learn by testing its products to determine dangers arising out of all foreseeable uses. Because no evidence was introduced at trial to show that anyone knew, prior to this litigation, of a mini-trampoline's propensity to cause stress fractures in joggers' lower legs, there was insufficient evidence to support the jury's finding that the defendants breached their duty to the plaintiff to warn her that using the mini-trampoline for jogging could cause her these injuries.

In Kansas, a manufacturer's failure to warn is measured by whether it was reasonable under the circumstances, whether the claim is based on negligence or "even if the claim is made under the rubric of a strict products liability defect." *Johnson v. American Cyanamid Co.*, 239 Kan. 279, 718 P.2d 1318, 1324–25 (1986). Therefore, the applicable analysis is based on negligence. *Id.* 718 P.2d at 1324. Kansas has adopted the Restatement view of a manufacturer's duty to warn. *Long v. Deere & Co.*, 238 Kan. 766, 715 P.2d 1023 (1986).

Chattel Known to be Dangerous for Intended Use. One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for

physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, *if the supplier (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied,* and (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and (c) *fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.*"

Restatement of Torts (Second) § 388 (1963) (emphasis added).

The Kansas cases hold that a manufacturer has no duty to warn of dangers which the manufacturer does not know or have reason to know. *See State ex rel. Stephen v. GAF Corp.,* 242 Kan. 152, 747 P.2d 1326, 1330 (1987); *Wooderson v. Ortho Pharmaceutical Corp.,* 235 Kan. 387, 681 P.2d 1038, *cert. denied,* 469 U.S. 965, 105 S.Ct. 365, 83 L.Ed.2d 301 (1984). The question for this motion is—what does a manufacturer have reason to know? The only basis on which the jury could have reached its verdict here is if it answered that question by concluding that the manufacturer should have done testing of the product and charged the defendants with the knowledge they would have gained, presumably, had they conducted the tests performed by plaintiff's experts for the purposes of this litigation.

Neither party has cited any case, nor has the court uncovered any, which specifically states whether a manufacturer has reason to know, for purposes of its duty to warn, the results of reasonable testing that it could have but did not perform in order to discover the dangers of foreseeable uses of its product. Thus the court has been compelled to arrive at its decision by attempting to deduce what result would occur if Kansas were faced with such a case.

The leading case on a manufacturer's duty to warn in Kansas focused on the state of the defendant's knowledge and the knowledge possessed by experts in the applicable field at various times up until the plaintiff was injured by her use of a product. *See Wooderson,* 235 Kan. at 408–09, 681 P.2d 1038. The court stated in that case:

We hold that the manufacturer of an ethical drug has a duty to warn the medical profession of dangerous side effects of its products of which it knows, has reason to know, or should know, based upon its position as an expert in the field, upon its research, upon cases reported to it, and upon scientific development, research, and publications in the field. This duty is continuing.

*Id.* at 409, 681 P.2d 1038. *Wooderson* does not require that a manufacturer warn users of its products of dangers which, although not known by anyone in the field, could be found by reasonable testing. In one case cited by *Wooderson,* a court equated what a manufacturer has reason to know only with "its constructive knowledge as measured by scientific literature and other available means of communication." *McEwen v. Ortho Pharmaceutical,* 270 Or. 375, 528 P.2d 522 (1974). On its face, then, *Wooderson* seems to limit the duty and does not extend it to testing.

However, this court is somewhat uncomfortable in relying on *Wooderson* to resolve the issue of the extent of the defendants' duty to warn because *Wooderson* differs from the present case in two substantial ways: (1) it involved an ethical drug manufacturer, and (2) there was already sufficient information in the field, at the time that the plaintiff was injured by her use of the defendant's product, that the defendant's product could cause the type of injury sustained by the plaintiff.

■ With regard to the first distinction, manufacturers of ethical drugs may be held to unique standards which are not applicable to manufacturers in general. For example, a manufacturer of ethical drugs has a continuing duty to warn, *see id.,* while it is unclear in Kansas whether a non-drug manufacturer's duty to warn is also continuing or terminates when the product leaves the manufacturer's possession. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 96, p. 685 (5th ed. 1984) (a manufacturer's duty to warn is based on the state of the art of knowledge when the product leaves the manufacturer's possession). *But see, Mason v. Texaco, Inc.,* 741 F.Supp. 1472, 1482 (D.Kan. 1990), *aff'd and remanded,* 948 F.2d 1546

(10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992) (finding that Kansas courts would hold that an industrial chemical manufacturer has a continuing duty to warn of dangers revealed by scientific studies).[2] However, there is no obvious reason why Kansas would make the duty to warn *less* stringent for manufacturers of ethical drugs than for manufacturers in general. If anything, one might argue that if the duty to warn in *Wooderson* was limited to the state of the art it is indicative that Kansas would also limit the duty to warn for other manufacturers because Kansas seems more protective of ethical drug consumers than of consumers in general. Thus, this distinction probably does not cut against application of that case to this one.

The second distinction, however, that the state of the art in *Wooderson was* that the defendant's product *could* cause the injury which the plaintiff suffered, is more troubling. In *Wooderson,* a woman suffered acute kidney failure and malignant hypertension as a result of taking ethical drug manufacturer Ortho's high potency oral contraceptive. At the time that Ms. Wooderson was taking these contraceptives, there were already twenty-one reported cases of women on oral contraceptives, similar to Ortho's, who had experienced the same injuries which the plaintiff ultimately experienced. However, Ortho did not provide any warning on the product label or in the information supplied to Ms. Wooderson's physician that taking this medication could result in acute kidney failure or malignant hypertension. Therefore, the focus in *Wooderson* was on when the state of the scientific literature becomes so persuasive of the existence of a danger that the manufacturer has a duty to warn. In contrast, in the present case, no such knowledge existed concerning the possibility of getting stress fractures from jogging on a mini-trampoline until this lawsuit was commenced. Therefore, the focus here is on whether the manufacturer must warn based only on the state of the art or whether it

must affirmatively conduct tests to determine the dangerousness of foreseeable uses of its product and then warn about those dangers. The *Wooderson* court did not need to reach that issue and its failure to include reasonable testing for foreseeable uses might not have represented deliberate line drawing. Still, the fact remains that testing was not included.[3]

Perhaps the leading commentator in the area of torts and product liability, often cited by Kansas courts, seems to support the view that the *Wooderson* state of the art warning rule is applicable to all manufacturers, such as the defendants in this case. Prosser and Keeton puts the proposition as follows:

> There can be no negligence in failing to warn about a risk in the absence of evidence that would justify a finding that a manufacturer or other seller knew or in the exercise of ordinary care should have known about it. Moreover, it is the state of the art in the sense of the scientific knowledge and technological information regarding danger that was available to a seller at the time such seller surrendered possession that is relevant and admissible as regards what he should have known. The information which a manufacturer should have known would include information that would be obtainable from a reasonable inquiry of experts and a reasonable research of scientific literature.

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 96, p. 685 (5th ed. 1984). Although that language does not expressly rule out a duty to test as a component of "should have known", the absence of that additional obligation from the specific enumeration (which includes expert inquiry and research of literature) can be weighed in the balance as also being consistent with a limited reading of the *Wooderson* duty to warn.

The plaintiff argues that the defendants had a duty to test their mini-trampoline, and

---

**2.** Fortunately, whether the defendants had a continuing duty to warn is not at issue in this case.

**3.** In *Mason v. Texaco, Inc.,* Judge Theis extended the "state of the art" warning rule of *Wooderson* to all manufacturers, not just manufacturers of

ethical drugs. 741 F.Supp. at 1482. Again, in contrast to the present case, in *Mason* there was already abundant information in the field at all relevant times that the defendant's product caused the plaintiff's injury. *Id.* Thus the court did not reach our issue there either.

if they had tested it prior to Ms. Richter using it in the same manner that the plaintiff's expert tested it a few years later, they would have discovered this potential danger from using the product. Therefore, she contends that the defendants had reason to know of the potential injuries from jogging on the mini-trampoline. Although the court finds this line of reasoning somewhat persuasive, it disagrees that Kansas courts would so hold.

Kansas recognizes a manufacturer's duty to test.

> The rule is that a manufacturer has a duty to make such tests and inspections, during and after the process of manufacture, as should be recognized as being reasonably necessary to secure the production of a safe product; and a manufacturer who negligently fails to use reasonable care in making such tests and inspections, and thereby produces a defective article which causes damage while being put to an ordinary, anticipated use, is liable for such damage.

*Lindquist v. Ayerst Laboratories, Inc.*, 227 Kan. 308, 320, 607 P.2d 1339 (1980) (*quoting* 1 Hursch and Bailey, *American Law of Products Liability* 2d § 2:29, p. 214 (1974)). This rule seems to extend the manufacturer's duty to test merely to design defects and manufacturing defects of its products. Although there does not appear to be a purely logical reason why this duty to test could not be applied also to a manufacturer's duty to warn, the Kansas cases, such as *Wooderson*, as reviewed above do not seem to so extend the duty.[4]

Based on the foregoing, though not without misgivings, the court finds that Kansas courts would hold that a manufacturer only has a duty to warn of the dangerous propensities of its products "of which it knows, has reason to know, or should know, based upon its position as an expert in the field, upon its research, upon cases reported to it, and upon scientific development, research, and publications in the field." *Wooderson*, 235 Kan. at

409, 681 P.2d 1038. For this case, then, the plaintiff would have had to show that (1) the manufacturer knew, or (2) an expert in the field knew, or (3) there was information in the scientific literature concerning the alleged dangerous propensity of a product in order for a manufacturer to have a duty to warn the plaintiff of that propensity. Because the plaintiff failed to make such a showing, the defendants, as a matter of law, did not have a duty to warn her of the alleged dangerous propensity of their product.

The plaintiff did not present any evidence at trial which indicated that the defendants knew or should have known (as now defined) at any time prior to this litigation that jogging on a mini-trampoline could cause stress fractures. There was no evidence admitted at trial that the defendants had any actual knowledge of this alleged propensity of their product, nor was there any evidence that anyone in the world had knowledge prior to this litigation of this propensity of either the defendant's mini-trampoline or anyone's mini-trampoline. A number of studies which predate this litigation were discussed by the plaintiff's and the defendants' experts which addressed jogging on mini-trampolines. None of these studies mentioned the danger of developing stress fractures from jogging on mini-trampolines.

The only information which the plaintiff presented at trial which showed that the defendants' mini-trampoline, when jogged upon, could cause this injury was (1) the plaintiff's own injury, and (2) an experimental study conducted by the plaintiff's experts in preparation for this litigation. Therefore, the state of the art of knowledge when the defendant manufactured the mini-trampoline, when Ms. Richter purchased it, and when she later jogged on it was that jogging on mini-trampolines did not cause stress fractures in the user's legs.

The defendants raise other issues which they contend entitle them to judgment as a

4. There may be a good policy reason for not incorporating the duty to warn into the duty to test. A manufacturer must currently keep abreast of all information in the field, including their own, and warn foreseeable users of dangers of which they learn. If all possible tests for

dangers which may result from all possible foreseeable uses, even if those uses or those dangers have yet to occur anywhere in the world, is an aspect of the range of knowledge for which a manufacturer has a duty to warn, this may impose an intolerable burden on manufacturers.

matter of law. The court does not reach these issues because of its determination that there was insufficient evidence to support the jury's finding.

### IV. New Trial Motion

The defendants have moved, in the alternative, for a new trial. However, the motion for a new trial is moot in light of the court's ruling on the motion for judgment as a matter of law.

### V. Conclusion

**IT IS THEREFORE ORDERED BY THE COURT** that the defendants' motion for judgment as a matter of law (Doc. # 148) is granted.

**IT IS FURTHER ORDERED** that the defendants' motion for a new trial (Doc. # 148) is denied as moot.

**IT IS SO ORDERED.**