Dea RICHTER, Plaintiff–Appellant,

v.

LIMAX INTERNATIONAL, INC., LMX–
Manufactures Consultants, Inc.,
Defendants–Appellees.

Dea RICHTER, Plaintiff–Appellee,

v.

LIMAX INTERNATIONAL, INC.,
Defendant–Appellant.

Nos. 93–3167, 93–3185.

United States Court of Appeals,
Tenth Circuit.

Jan. 25, 1995.

Michael P. Oliver (Karl Kuckelman, with him, on the brief) of Wallace, Saunders, Austin, Brown and Enochs, Overland Park, KS, for defendant-appellant.

William H. Pickett (David T. Greis, with him, on the brief), of William H. Pickett, P.C., Kansas City, MO, for plaintiff-appellee.

Before MOORE, Circuit Judge, LAY[1] and McWILLIAMS, Senior Circuit Judges.

LAY, Senior Circuit Judge.

Dearmedia Richter appeals from the district court's grant of judgment as a matter of law to Limax International, Inc. and LMX–Manufactures Consultants, Inc. (collectively Limax). *Richter v. Limax Int'l, Inc.,* 822 F.Supp. 1519 (D.Kan.1993). Richter claimed that repetitive use of a mini-trampoline manufactured by Limax caused stress fractures in her ankles. In March 1991, Richter sued Limax alleging the mini-trampoline was defectively designed and came with an inadequate warning. The jury found, in a special verdict, that the mini-trampoline was not defectively designed. However, it nonetheless found Limax was liable under theories of strict liability and negligence for its failure to warn and determined damages to be $472,712 reduced by Richter's percentage of fault of thirty-eight percent.

Limax then moved for judgment as a matter of law, which the court granted. The court concluded the defendant had no duty to warn because the plaintiff had failed to prove that Limax had knowledge of the danger of stress fractures or that the danger was known in the state of the art. The court further concluded that under these circumstances Kansas law does not impose a duty on manufacturers to warn about dangers they might have discovered by conducting reasonable tests. Richter appealed. We reverse and remand to the district court with instructions to reinstate the jury's verdict and enter a judgment on the verdict.

## FACTS

Richter purchased a mini-trampoline from Limax on February 1, 1989. There were no instructions in or on the box containing the mini-trampoline, although the trampoline did have sticker on it stating: "This product was designed to be used only as an exercise device. It is not designed to be used for acrobatics, trampolining or any springboard type activities." Richter stated she only used the trampoline for jogging. She began by jogging for short periods of time but eventually increased her time up to sixty minutes per day. She used the product until March 10, 1989.[2] The next day she experienced severe pain in her ankles while walking. A doctor diagnosed her as having stress fractures in her ankles. Richter testified the pain forced her to discontinue her work as a sales representative for a furniture manufacturer.

The plaintiff produced expert testimony which established relatively simple tests would have revealed that because the surface of a mini-trampoline depresses furthest in the center and decreasingly towards the edges, as a jogger's feet strike the trampoline's surface and it gives way, the inside of each foot drop further than the outside. This rotation of the foot, which is termed "eversion," occurs to a lesser degree in normal jogging, but rebound jogging markedly accentuates the degree of rotation.

Further testimony established it has long been known that lateral pulling on a bone by ligaments or muscles can cause microscopic fractures. If the bone is not allowed time to heal and the stress on the bone continues, these tiny fractures can coalesce into a stress fracture. The eversion of the feet caused by the mini-trampoline results in certain tissues

---

1. Honorable Donald P. Lay, Senior Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

2. Richter admitted she had experienced soreness in her ankles during and after using the mini-trampoline, but until she felt severe pain, she believed the soreness was normal for someone beginning a new exercise program.

pulling laterally on particular ankle bones. Richter's expert witnesses testified that long-term use of the trampoline could cause stress fractures in the affected ankle bones.

Limax admitted it conducted no tests relating to the long-term effects of jogging on the mini-trampoline and did not systematically review published studies of mini-trampolines by sports medicine and exercise specialists. The CEO of Limax testified the company had sold approximately two million mini-trampolines world-wide and Richter's complaint about stress fractures was the first Limax had received. Further, although mini-trampolines had been in use since 1975, by the time of Richter's purchase no one had yet suggested their use entailed a risk of stress fractures. No expert testifying at trial could identify any study or article on rebound jogging or mini-trampolines that reported ankle stress fractures or pointed out the risk joggers faced of incurring such an injury.

Richter, however, produced testimony by experts that observations from very simple tests, interpreted in light of well-established knowledge about the structure of the foot and the causes of stress fractures, would have made it apparent that the repetitive use of the mini-trampoline for jogging could cause stress fractures. Two experts testified the danger was well within the state of society's knowledge about such matters. One of Richter's experts pointed out that although there were no known reports concerning mini-trampolines as a cause of stress fractures, sport and exercise magazines as well as scientific and medical journals have long published articles establishing that repetitive jogging can cause stress fractures. The testimony verified that such repetitive jogging on a mini-trampoline exaggerates the stresses that result from repetitive jogging on a flat surface. Although the mini-trampoline was found by the jury not to have a defective design, Richter's expert witness testimony established that the marked accentuation of eversion caused by the design of the mini-

trampoline could result in her kind of injury developing from her repetitive jogging.

## KANSAS LAW

■ Richter contends Kansas law imposes a duty on manufacturers to test their products and warn consumers appropriately. In *Wooderson v. Ortho Pharmaceutical Corp.*, the Kansas Supreme Court held an ethical drug company had a duty to warn the medical profession about what "it knows, has reason to know, or should know, based upon its position as an expert in the field, upon its research, upon cases reported to it, and upon scientific development, research, and publications in the field." 681 P.2d 1038, 1057 (Kan.), *cert. denied*, 469 U.S. 965, 105 S.Ct. 365, 83 L.Ed.2d 301 (1984). Richter interprets the language "upon its research," to require manufacturers to test their products for their potential to injure consumers.[3]

The district court held, "though not without misgivings," that Kansas law does not require a manufacturer to test its products for dangers not otherwise known in *the state of the art. Richter*, 822 F.Supp. at 1524. The court observed that *Wooderson* dealt with the question of "when the state of the scientific literature becomes so persuasive of the existence of a danger that the manufacturer has a duty to warn." *Id.* at 1523. The court held that because the evidence indicated that prior to Richter's injuries, no one was aware of the possibility that jogging on a mini-trampoline could cause stress fractures, there was nothing to give rise to a duty warn. The district court found that *Wooderson* did "not require that a manufacturer warn users of its products of dangers which, although not known by anyone in the field, could be found by reasonable testing." *Id.* at 1522.

The district court acknowledged that Kansas law recognizes a manufacturer's duty to test, quoting from *Lindquist v. Ayerst Laboratories, Inc.*, 227 Kan. 308, 607 P.2d 1339, 1350 (1980) (in turn, quoting 1 Hursch and Bailey, American Law of Products Liability 2d § 2:29 (1974)):

**3.** In *Patton v. Hutchinson Wil–Rich Manufacturing Co.*, 861 P.2d 1299, 1309 (Kan.1993), the Kansas Supreme Court limited *Wooderson's* rationale to ethical drug manufacturers in so far as their post-sale duty to warn was concerned. *Patton* did not, however, change a manufacturer's duty to warn at the time of sale as articulated in *Wooderson*.

The rule is that a manufacturer has a duty to make such tests and inspections, during and after the process of manufacture, as should be recognized as being reasonably necessary to secure the production of a safe product; and a manufacturer who negligently fails to use reasonable care in making such tests and inspections, and thereby produces a defective article which causes damage while being put to an ordinary, anticipated use, is liable for such damage.

*Richter*, 822 F.Supp. at 1524.

However, the district court in granting judgment as a matter of law in favor of Limax *limited* the *Lindquist* case (admitting there was no compelling logical basis for doing so) to requiring testing *only* for specific design and manufacturing defects.[4]

■ Appellate review of a district court's determination of state law is *de novo*. *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1220-21, 113 L.Ed.2d 190 (1991). We find the district court's restrictive interpretation of *Lindquist* is contrary to Kansas law on the duty of a manufacturer to warn consumers of foreseeable dangers. An earlier district court decision summed up Kansas law relating to the duty to warn consumers:

Ordinarily, a manufacturer has a duty under Kansas law to warn consumers and users of its products when it knows or has reason to know that its product is or is likely to be dangerous during normal use. The duty to warn is a continuous one, requiring the manufacturer to keep abreast of the current state of knowledge of its products as acquired through research, adverse reaction reports, scientific literature, and other available methods. A manufacturer's failure to adequately warn of its product's reasonably foreseeable dangers renders that product defective under the doctrine of strict liability.

*Pfeiffer v. Eagle Mfg. Co.*, 771 F.Supp. 1133, 1139 (D.Kan.1991) (O'Connor, J., citations and footnote omitted).

Kansas applies the same test to whether a manufacturer met his duty to warn under negligence as it does under strict liability.[5]

■ Kansas law makes clear this general duty to warn consumers of foreseeable dangers is not limited to ethical drug companies. In 1976, Kansas adopted the rule set out in the Restatement (Second) of Torts § 402A (1965) in *Brooks v. Dietz*, 218 Kan. 698, 545 P.2d 1104, 1108 (1976), an adoption that has been repeatedly affirmed, *see, e.g., Cott v. Peppermint Twist Management Co.*, 253 Kan. 452, 856 P.2d 906, 931 (1993); *Savina v. Sterling Drug, Inc.*, 247 Kan. 105, 795 P.2d 915, 923 (1990). Section 402A establishes strict liability for a seller of a product whose defective condition makes the product unreasonably dangerous.[6] Comment *h* to section 402A states that where a seller "has reason

4. *Id.* The court noted that policy considerations might dictate this result to avoid placing the onerous burden on manufacturers to conduct "all possible tests for dangers which may result from all possible foreseeable uses, even if those uses or those dangers have yet to occur anywhere in the world...." *Id.* at 1524 n. 4.

5. In determining warning issues, the test is reasonableness.... "[I]n all warning cases [either negligence or strict liability]—even if the plaintiff or the court claims to analyze failure to warn or inadequacy of warning in the context of a strict products liability claim—the tests actually applied condition imposition of liability on the defendant's having actually or constructively known of the risk that triggers the warning." *Johnson v. American Cyanamid Co.*, 239 Kan. 279, 718 P.2d 1318, 1324 (1986), *aff'd*, 243 Kan. 291, 758 P.2d 206 (1988), (quoting *Kearl v. Lederle Lab.*, 172 Cal.App.3d 812, 218 Cal.Rptr. 453, 465-66 (1985)).

6. Section 402A states:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

to anticipate that danger may result from a particular use, ... he may be required to give adequate warning of the danger (see Comment *j* ), and a product sold without such warning is in a defective condition." Kansas courts have relied on both comments *j* and *k* to section 420A in concretizing the duty to warn announced in comment *h*.[7] *See Cott*, 856 P.2d at 931; *Humes v. Clinton*, 246 Kan. 590, 792 P.2d 1032, 1039 (1990); *Johnson*, 718 P.2d at 1323. These comments make clear that a product may not be defectively designed, but may nonetheless be defective because the manufacturer failed to adequately warn the users of the product of a reasonably foreseeable hazard. The Kansas Supreme Court in *Savina* stated this proposition as follows:

> Under the strict liability theory, a plaintiff is not required to establish misconduct by the maker or seller but, instead, is required to impugn the product. The plaintiff must show the product is in "a defective condition unreasonably dangerous," which means that it must be defective in a way that subjects persons or tangible property to an unreasonable risk of harm. Prosser and Keeton, Law of Torts § 99, p. 695 (5th ed. 1984) A product can be defective in one of the following three ways: (1) a flaw is present in the product at the time it is sold; (2) *the producer or assembler of the product fails to adequately warn of a risk or hazard related to the way the product was designed;* or (3) the product, although perfectly manufactured, contains a defect that makes it unsafe. Prosser, § 99, pp. 695–98.

795 P.2d at 923 (emphasis added).[8]

■ The district court's restriction of the general duty to warn to specific design defects overlooks that under Kansas law of strict liability, even if a product does not have a design defect, failure to warn of a foreseeable danger arising from the product's normal use makes the product defective.

The mini-trampoline was specifically intended for exercise, and in particular, for jogging. When used for this purpose, however, the mini-trampoline's design results in the foot turning in a way that places stress on the ankle bones. That the design is not defective, within the state of the known art, does not detract from the manufacturer's

---

7. Comment *j* reads, in pertinent part:
   Directions or warning. In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use.

   Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.
   Comment *k* reads:
   Unavoidably unsafe products. There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use.... Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous.... The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.

8. *See also Menne v. Celotex Corp.*, 861 F.2d 1453, 1457 n. 3 (10th Cir.1988) (referring to section 402A and comments *j* and *k* and stating "[f]ailure to adequately warn of [reasonably foreseeable] hazards renders the product unreasonably dangerous."); *Deines v. Vermeer Mfg. Co.*, 755 F.Supp. 350, 353 (D.Kan.1990) ("A product may be perfectly manufactured and meet every requirement for its designed utility and still be rendered unreasonably dangerous through failure to warn of its dangerous characteristics."); *Johnson*, 718 P.2d at 1323–24 (stating "There is no claim ... a defective product was delivered.... This leaves the only possible liability in the adequacy of the warning provided by the manufacturer."); *Mays v. Ciba-Geigy Corp.*, 233 Kan. 38, 661 P.2d 348, 362–63 (1983) (quoting *Russell v. G.A.F. Corp.*, 422 A.2d 989 (D.C.App. 1980), which stated "[a] product can be perfectly made and still require directions or warnings on proper use in order to be safe" and *Harris v. Northwest Natural Gas Co.*, 284 Or. 571, 588 P.2d 18 (1978), which stated "[a] product may be perfectly manufactured and meet every requirement for its designed utility and still be rendered unreasonably dangerous through failure to warn of its dangerous characteristics.")

duty to warn the consumer of foreseeable dangers that can arise from normal use.

## SUFFICIENCY OF EVIDENCE

■ Although Kansas law governs a manufacturer's duty to warn, federal law governs our determination of whether the court properly granted the judgment as a matter of law. *Zimmerman v. First Fed. Sav. & Loan Ass'n*, 848 F.2d 1047, 1051 (10th Cir.1988). We review the evidence in the light most favorable to the verdict holder and we are not permitted to weigh the evidence or make credibility determinations. *See Zuchel v. City and County of Denver*, 997 F.2d 730, 734 (10th Cir.1993). A judgment as a matter of law rendered after a verdict has been entered is appropriate only when reasonable minds could not possibly differ as to an issue's necessary outcome. *Id.*

■ Given that repetitive jogging on the mini-trampoline could cause stress fractures, the question becomes whether Richter presented sufficient evidence that a jury could permissibly conclude reasonable tests would have been effective in bringing this danger to light. *See Lindquist v. Ayerst Lab., Inc.*, 227 Kan. 308, 607 P.2d 1339, 1350 (1980) (relying on 1 Hursh and Bailey, American Law of Products Liability 2d § 2:29, p. 217 (1974)). Richter presented a substantial amount of expert testimony to the effect that visual observation of a person jogging on the mini-trampoline by someone with expertise in biomechanics, would reveal eversion and further that relatively simple tests could measure the degree of eversion. A comparison of that measurement with a measurement of the eversion caused by jogging on a flat surface would have revealed mini-trampolines cause users' feet to evert to a markedly greater degree.[9] Testimony established that it is well known that such stresses, experienced on a repetitive basis, could cause frac-

tures. We hold the jury could have reasonably found Richter's injury was causally related to repetitive jogging on the mini-trampoline, the use for which Limax's product was intended. The jury could also reasonably have concluded Limax should have warned users of this danger because the danger was eminently knowable given the state of the art and Limax should have known of it.

■ As Justice Blackmun observed:

Products liability grew out of a public policy judgment that people need more protection from dangerous products than is afforded by the law of warranty. (citation omitted).... "Public policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market."

*East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 866, 106 S.Ct. 2295, 2299–2300, 90 L.Ed.2d 865 (1986) (quoting *Escola v. Coca Cola Bottling Co.*, 24 Cal.2d 453, 150 P.2d 436, 441 (1944) (Traynor, J. concurring)). As discussed *supra*, Kansas law does not permit a manufacturer to avoid responsibility for its failure to warn that the intended use of its product could cause injuries when those injuries are reasonably foreseeable. Kansas imposes on manufacturers a duty to research and make such tests and inspections as reasonably necessary to make their products safe or to establish a basis for warning consumers of a product's unavoidable dangers.

■ Under Kansas law, both strict liability and negligence require warnings only for dangers which are reasonably foreseeable in light of the intended use of a product. The jury could reasonably have concluded that a simple consultation with a biomechanics expert would have given Limax sufficient infor-

---

9. Limax argues that because jogging on flat surfaces can cause stress fractures in the feet and legs, yet manufacturers of jogging shoes have no duty to warn, it should have no duty to warn about jogging on a mini-trampoline, especially since Richter is the only person known to have suffered ankle stress fractures. In light of testimony at trial, this argument is unpersuasive. Jogging shoes do not increase the degree of eversion that occurs naturally. Indeed, trial testimony revealed high quality jogging shoes are designed to counter the natural degree of eversion. The mini-trampoline, in contrast, does not counter the natural degree of eversion, or even leave the degree of eversion unaffected. Instead it dangerously accentuates the natural tendency of the foot to evert while jogging because of the angle at which the surface of the trampoline depresses. It is this accentuation that gives rise to the duty to warn.

mation to arrange for appropriate testing of the mini-trampoline. No expert witness for either side expressed any doubt that the mini-trampoline accentuates eversion of the ankles or that eversion could cause stress fractures. It is true that no one appears to have considered the problem until Richter's injury occurred, but it is also true that plaintiff's evidence demonstrated that the danger was patently obvious to any expert who had a reason to look for it. The jury could permissibly conclude Limax should reasonably have foreseen that design of the mini-trampoline could result in the harm produced. Limax conceded that it did no testing or research to consider foreseeable harm arising out of the uses to which the mini-trampoline would be put.

■ Manufacturers do not have a duty to test for inconceivable dangers, nor do they have a duty to test for every conceivable danger. They do have a duty to warn of dangers of harmful effects arising from the foreseeable use and misuse of a product that are known or are readily foreseeable in the state of art. In any given case, plaintiff's evidence must sufficiently demonstrate that the harm incurred should have been reasonably foreseeable to the manufacturer of the product. Absent such proof a manufacturer cannot be held liable for harm that no reasonable person could anticipate.[10]

Every case must turn on its own evidentiary facts. In the present case, plaintiff's experts testified that the accentuated eversion of the foot caused by prolonged jogging on the mini-trampoline made Richter's injury foreseeable and that the manufacturer should have warned the user of the product of the possible foreseeable harm she encountered. We do not make this ruling as a matter of law. We simply find that there existed substantial evidence in the record from which the jury could find that the harm was foreseeable. As earlier stated, we must review the evidence in the light most favorable to the verdict holder. A fair and impartial jury concluded under the evidence that because of the specific design of the mini-trampoline, Richter's harm was foreseeable. We simply conclude there was sufficient evidence to allow the jury to make that finding.

We find that the district court erred in granting a judgment as a matter of law and we therefore hold that the verdict and judgment in favor of the plaintiff should be reinstated.

## CROSS–APPEAL

On cross appeal, Limax argues that even if it had a duty to test its product, Richter failed to produce evidence that there was any likelihood of a similar injury occurring to another person sufficient to give rise to a duty to warn. Limax also contends Richter made no showing as to what warning should have been given or as to whether the warning would have been effective in avoiding her injury.

■ As Limax notes, one of Richter's expert witnesses, Dr. Sands, could not say what the probability of another person suffering the same injury as Richter was. Dr. Sands did not perform any tests that would have provided a basis for such an estimation. Rather, he did an experiment to measure the extent to which the mini-trampoline causes a jogger's feet to evert. It is misleading for Limax to argue the probability must be slight when the expert witness stated he did not know what the probability was. The jury could have inferred from all the evidence that there was a real risk of similar injuries occurring to others. The jury was not obligated to conclude that because the CEO of Limax testified he had not heard of any similar injuries, no such injuries had ever occurred.

■ As to whether a warning would have been effective in avoiding the injury, the jury did find Richter was thirty-eight percent at fault for her injuries, presumably believing she should have sought medical advice more promptly and limited or stopped her use of the mini-trampoline soon after she started experiencing pain. Further, "[u]nder Kansas

10. For example, if Richter had developed through the use of the mini-trampoline hives or a severe skin irritation, in the total absence of testimony in the record that such harm would be foreseeable, under such circumstances, the manufacturer would have no duty to warn. The point is that each case must be decided upon the evidentiary proofs in the record.

law, an inadequate warning creates a presumption of causation." *O'Gilvie v. International Playtex, Inc.*, 821 F.2d 1438, 1442 (10th Cir.1987) (citing *Wooderson*, 681 P.2d at 1057). Limax insists that because the jury heard no evidence as to what an adequate warning might have been, the jury had no basis for deciding a warning would have been effective. Limax contends that to establish causation, Richter should have had to testify she would have behaved differently had she been warned.[11] Kansas does not require such self-serving testimony from plaintiffs and Limax's argument entirely ignores that the effect of the presumption is to place the burden on Limax to rebut it. *Mason v. Texaco, Inc.*, 741 F.Supp. 1472, 1490 (D.Kan. 1990), *aff'd* and *remanded* by 948 F.2d 1546 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992). The trial court did not err in submitting the issue to the jury.

Reversed and remanded to the district court to reinstate the jury's verdict and enter a judgment on the verdict.

---

11. The jury could reasonably infer from testimony that Richter did read the only warning that came with the mini-trampoline.