EBEL, Circuit Judge,
dissenting.
Although I join Sections I and II of the majority opinion, I respectfully dissent from Section III (affirming the jury verdict on Burton’s pre-1969 negligent failure to warn theory) and Section IV (affirming the jury verdict on Burton’s pre-1969 negligent failure to test theory).
I. Pre-1969 Negligent Failure to Warn Claim
The jury rendered a verdict in Mr. Burton’s favor on his pre-1969 negligent failure to warn claim. Burton v. R.J. Reynolds Tobacco Co., 205 F.Supp.2d 1253, 1255 (D.Kan.2002). Reynolds argues, among other things, that (a) the statute of limitations bars Mr. Burton’s addiction-based failure to warn claim; and (b) the jury’s verdict on Mr. Burton’s pvd-based failure to warn claim is riot supported by sufficient evidence. I agree with Reynolds as to both arguments.

A. Addiction-Based Claim: Statute of Limitations

Personal injury tort actions must be brought within two years of the accrual of the action. Kan. Stat. § 60-513(a)(4); Smith v. Yell Bell Taxi Inc., 276 Kan. 305, 75 P.3d 1222, 1225 (2003). An action “shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party.” Kan. Stat. § 60-513(b).
The term “reasonably ascertainable” does not mean “actual knowledge” but is “an objective standard based on an examination of the surrounding circumstances.” Davidson v. Denning, 259 Kan. 659, 914 P.2d 936, 943, 948 (1996). Kansas law expressly imposes on a plaintiff an obligation to investigate available sources. See id. at 946; Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 104 F.Supp.2d 1294, 1298 (D.Kan.2000) (applying Kansas law).
Mr. Burton filed this lawsuit against Reynolds on May 25, 1994. The district court submitted to the jury the question of whether Mr. Burton could reasonably have discovered his addiction prior to May 25, 1992, and the jury concluded that he could not reasonably have discovered his addiction prior to that date. Accordingly, the district court held that Mr. Burton’s claims were not time barred. Burton v. R.J. Reynolds Tobacco Co., 208 F.Supp.2d 1187, 1209-10 (D.Kan.2002). Reynolds now argues that the jury’s determination was not supported by substantial evidence.
The evidence presented at trial indicates that on May 3, 1988, the Surgeon General presented to Congress a report entitled “Nicotine Addiction.” The three major conclusions of the report were that cigarettes are addicting, that nicotine is the drug in cigarettes that causes addiction, *922 and that the addictive properties of nicotine are similar to the addictive properties of heroin and cocaine. The report recommended that health care organizations should initiate or strengthen efforts to inform the public about the addictive properties of cigarettes and that Congress should require cigarette companies to attach an addiction warning on cigarette labels and advertisements.
One of the scientists who helped draft the report testified regarding one of the purposes of the report:
Looking at the information, we wanted to make sure that there were conclusions that were clear to the American people. It also was our belief that the findings of the report were so powerful and so important and that the message of their findings needed to get out in a clear way, so we decided to see what information could be reached, and it ended up we could fit the major findings into those three — and we use the term sound bytes, that we knew could be presented; the public would get it because, you know, precious time, whether in newspapers or in the media, that they would understand it and could clearly communicate, and one could read the whole report or portions of it for the support.
This testimony demonstrates that the report was designed to achieve widespread publicity to inform smokers like Mr. Burton of the addictive properties of nicotine. Indeed, the title of the report was changed from “Pharmacological Basis of Cigarette Smoking” to “Nicotine Addiction” in order to make the report more readily accessible to the tobacco-consuming public.
This evidence establishes that long-time cigarette smokers like Mr. Burton would have had good reason by 1988 at the very latest to investigate a possible addiction. See Soliman v. Philip Morris Inc., 311 F.3d 966, 973 (9th Cir.2002) (characterizing 1988 report as “hardly [an] obscure detail] in the historical record”). Because Kansas expressly imposes upon plaintiffs a duty to investigate potential injury, Davidson, 914 P.2d at 946, the evidence suggests that Mr. Burton’s addiction injury was “reasonably ascertainable” by 1988.
Mr. Burton offered no relevant evidence to the contrary. He points to a statement by Reynolds’ CEO in a 1998 deposition that “I don’t believe that nicotine, by the classical definition of addiction, is addictive to anyone.” Mr. Burton fails to illustrate the relevance of this isolated, unpublicized comment in a deposition taken four years after Mr. Burton filed this lawsuit to the issue of whether a reasonable smoker would have realized his or her addiction to cigarettes in 1992. Mr. Burton also points to evidence that he had no idea he was addicted to cigarettes until 1993 when he became concerned about the circulatory problem in his legs. Kansas law could not be more clear, however, that Mr. Burton’s subjective knowledge of his injury is not dispositive. Rather, Mr. Burton is charged with constructive knowledge of information that is available through reasonable investigation. Davidson, 914 P.2d at 948 (explaining that term “reasonably ascertainable” does not mean “actual knowledge”).
I conclude that the evidence supports no other conclusion than that the reasonable smoker had good cause to investigate his or her possible addiction to cigarettes by 1988 at the very latest, when the Surgeon General published its report on nicotine addiction. See Bielicki v. Terminix Int’l Co., 225 F.3d 1159, 1162 (10th Cir.2000) (stating that jury finding is reversible if evidence “points but one way and is susceptible to no reasonable inferences supporting the party for whom the jury found” (internal quotation omitted)). The *923 limitations period on Mr. Burton’s addiction-based failure to warn claim therefore expired in 1990, four years before Mr. Burton brought this lawsuit. Accordingly, I believe this portion of his claim is barred by the statute of limitations.[1]

B. PVD-Based Claims: Sufficiency of the Evidence

To sustain a negligence claim under Kansas law, the plaintiff must prove by a preponderance of the evidence the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered. Honeycutt ex rel. Phillips v. City of Wichita, 251 Kan. 451, 836 P.2d 1128, 1136 (1992). Of particular importance here are the elements of duty and causation. As to the element of duty, “a manufacturer has a duty under Kansas law to warn consumers and users of its products when it knows or has reason to know that its product is or is likely to be dangerous during normal use.” Richter v. Limax Int’l, Inc., 45 F.3d 1464, 1468 (10th Cir.1995) (applying Kansas law) (internal quotations omitted). The duty extends only to those dangers “arising from the foreseeable use and misuse of a product that are known or are readily foreseeable in the state of art.” Id. at 1471.
As to the element of causation, Kansas law requires evidence that a défect in the product actually and proximately caused the plaintiffs injury. Wilcheck v. Doonan Truck & Equip., Inc., 220 Kan. 230, 552 P.2d 938, 942 (1976). An inadequate warning, however, creates a presumption of causation. See Wooderson v. Ortho Pharm. Corp., 235 Kan. 387, 681 P.2d 1038, 1057-58 (1984); O’Gilvie v. Int’l Playtex, Inc., 821 F.2d 1438, 1442 (10th Cir.1987) (applying Kansas law). “The effect of this presumption is to place the burden on [defendant] to rebut it.” Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 977 n. 6 (10th Cir.2001) (applying Kansas law (internal quotation omitted)). Kansas therefore does not require a plaintiff to testify that he would have behaved differently had he been properly warned. Richter, 45 F.3d at 1472. ’
I conclude that Mr. Burton has presented insufficient evidence of causation to sustain the jury’s verdict. The only two items of evidence to which Mr. Burton has directed our attention are.either insufficient or irrelevant.
Mr. Burton suggests that his receptiveness to a warning is demonstrated by his testimony that he would not have begun smoking in 1950 had he known of the risk of pvd at that time. This testimony is not relevant evidence of causation. As discussed above, this testimony indicates that Mr. Burton may have been receptive to information regarding the risk of pvd before he started smoking in 1950 but says nothing of his receptiveness to such information after he started smoking and became addicted to cigarettes. Only if Mr. Burton introduced evidence that Reynolds should have warned consumers of the risk of pvd in 1950 would Mr. Burton’s testimony that he was receptive to a warning in 1950 be relevant. This Mr. Burton has failed to do. The evidence contains an anecdotal scintilla of evidence that Reynolds may have had reason to suspect some association between pvd and cigarette smoking in 1954,[2] but there is no evidence *924 that Reynolds had or should have had knowledge of the risk of pvd at any earlier date. The record reflects that the 1940s and 1950s, because of the tremendous increase in smoking rates during World War II, were volatile decades in terms of scientific knowledge of the health risks associated with cigarette smoking. As such, the risks of which Reynolds should have been aware in 1954 cannot be inferred to be the risks of which it should have been aware in 1950. Because Mr. Burton has not pointed to any evidence that Reynolds had a duty to warn consumers of the risk of pvd in 1950, Mr. Burton’s testimony that he would not have begun smoking in 1950 had he been warned of that risk is not relevant evidence of causation.
Mr. Burton also insists that he is entitled to a presumption that he would have read and heeded warnings had they been provided. Mr. Burton is entitled to such a presumption if he proves the warnings were inadequate, but that presumption is rebuttable. See Ralston, 275 F.3d at 977 n. 6. Even assuming that Mr. Burton had proven that the warnings were inadequate, which I do not believe,[3] Mr. Burton’s trial testimony and other evidence unequivocally rebutted the presumption. The evidence clearly demonstrated that Mr. Burton disregarded all warnings after he began smoking, at least until those warnings were accompanied by the actual loss of his legs. Per this evidence, it is clear beyond any doubt that any warnings by Reynolds of the risk of pvd associated with cigarette smoking would have gone unheeded.
I conclude that Mr. Burton has presented insufficient evidence of causation to sustain the jury’s verdict on the pvd-based portion of his negligent failure to warn claim.
II. Pre-1969 Negligent Failure to Test
Reynolds argues, among other things, that (a) Mr. Burton’s addiction-based failure to test claim is barred by the statute of limitations; and (b) Mr. Burton’s pvd-based failure to test claim fails because, under Kansas law, failure to test cannot be established absent proof that the failure to test resulted in a design defect, warning defect, or manufacturing defect that caused his injuries, and there is no such proof here. I agree with Reynolds as to both arguments.
Mr. Burton’s addiction-based failure to test claim is barred by the statute of limitations for the same reason his addiction-based failure to warn claim is time barred. See discussion swpra. Accordingly, I turn directly to Mr. Burton’s pvd-based failure to test claim.
In Lindquist v. Ayerst Laboratories, Inc., the Supreme Court of Kansas recognized that a manufacturer has a duty to test and inspect its products:
The rule is that a manufacturer has a duty to make such tests and inspections, during and after the process of manufacture, as should be recognized as being reasonably necessary to secure the production of a safe product; and a manufacturer who negligently fails to use reasonable care in making such tests and inspections, and thereby produces a defective article which causes damage *925 while being put to an ordinary anticipated use, is liable for such damage.
227 Kan. 308, 607 P.2d 1339, 1350 (1980) (quoting 1 Hursh and Bailey, American Law of Products Liability 2d, § 2:29, at 214 (1974)). The court also noted that the plaintiff must prove that the tests would have been effective. Id. In other words, the plaintiff must prove that the manufacturer’s failure to test its product resulted in a defective product that caused injury to the plaintiff. See id.
Kansas law recognizes three- ways- in which a product may be defective: (1) a manufacturing defect; (2) a warning defect; and (3) a design defect. Delaney v. Deere & Co., 268 Kan. 769, 999 P.2d 930, 936 (2000). Accordingly, a plaintiff alleging a breach of the duty to test must prove that one of these three types of product defects caused-his or her injury.
In this case, Mr. Burton cannot claim that one of these three types of product defects caused Ms pvd-related injury. First, he neither argues nor points to any evidence that Reynolds’ alleged failure to test resulted in a manufacturing defect. Second, the jury expressly determined that Mr. Burton’s injuries were not caused by a defect in Reynolds’ design of the cigarettes.
Finally, Mr. Burton presented insufficient evidence that a warning defect caused his pvd-related injury. See discussion supra. As discussed above, the record supports no other conclusion than that Mr. Burton would not have responded to a warning from Reynolds after he started smoMng. See id. Of course, Mr. Burton did present evidence that he may have responded to a warning in 1950 before he ever started smoking. See id. . However, he has not identified any evidence that by 1950 pvd was a reasonably foreseeable danger of smoking such that Reynolds should have investigated and then warned of the potential danger. See Richter, 45 F.3d at 1471 (applying Kansas law) (stating that product- manufacturers have duty to test for and then warn of only foreseeable dangers, not every conceivable danger). Accordingly, that Mr. Burton would never have started smoking had he been warned of the danger of pvd in 1950 is not relevant evidence of causation.
Because Mr. Burton cannot claim that any product defect — either a manufacturing, design, or warning defect — caused his injury, he has no cause of action for failure to test.
CONCLUSION
For the reasons stated above, I would REVERSE the -jury’s entire verdict on liability and REMAND for entry of judgment as a matter of law in favor of Reynolds on all three claims.

. Mr. Burton's addiction-baséd failure to test claim is also time barred. See discussion infra.

. Specifically, Mr. Burton presented a 1954 Letter to the Editor, published in the Journal of the American Medical Association, providing an anecdotal report of a single smoker *924 who suffered vascular disease in his extremities.

. A warning that cigarette smoking is hazardous to one's health seems to me adequately to put a smoker on notice that cigarette smoking is hazardous to one's health. Once a smoker is put on notice of such risk, the duty of inquiry falls upon the smoker to probe the medical nuances of those risks with his or her doctor.