No. 50,674

BERNIECE C. LINDQUIST, individually and as Administrator of the Estate of Val A. Lindquist, *Appellant,* v. AYERST LABORATORIES, INC., a corporation; M. ROBERT KNAPP and COURTNEY CLARK, *Appellees.*

(607 P.2d 1339)

Opinion filed March 1, 1980.

*Patrick J. Michaud,* of Michaud, Cordry and Michaud, Chartered, of Wichita, argued the cause and *Gerald L. Michaud,* of the same firm, was with him on the brief for the appellant.

*Donald R. Newkirk,* of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause and was on the brief for appellee Ayerst Laboratories, Inc. and *William A. Hensley,* of Sherwood & Hensley, of Wichita, argued the cause, and *Kurt A. Harper,* of the same firm, was with him on the brief for the appellees M. Robert Knapp and Courtney Clark.

The opinion of the court was delivered by

HERD, J.: This is a medical malpractice case brought by Berniece Lindquist for the wrongful death of her husband, Val A. Lindquist, against Ayerst Laboratories, Inc., manufacturer of the anesthetic Fluothane and Drs. M. Robert Knapp and Courtney Clark, the anesthesiologists who administered the anesthetic to the decedent. The trial court sustained motions for directed verdicts in favor of Clark and for Ayerst as to punitive damages. The jury returned a verdict in favor of Ayerst and Knapp. We affirm.

The controlling facts can be briefly recited. On August 13, 1969, Val A. Lindquist went to his doctor, Dr. Willard J. Smith, who diagnosed a tumor of the right testicle. The same day Lindquist was admitted to the hospital and surgical removal of the testicle was performed the following day by Dr. Smith. During the surgery, the anesthesiologist, Clark, administered a general anesthetic known as Fluothane or Halothane. Due to a staph infection in the incision, Mr. Lindquist remained in the hospital for 10 days until August 24, 1969. The pathology report on Lindquist revealed a highly malignant form of cancer. He was

readmitted to the hospital on August 28, 1969, for a surgical procedure known as retroperitoneal node dissection, which was performed August 29, 1969. During this surgery, Fluothane was again used as the anesthetic, this time by Dr. Knapp. Four days after surgery, the patient developed extreme jaundice, lapsed into a coma and subsequently died on September 8, 1969, of liver failure.

The record on appeal is unclear but apparently Mrs. Lindquist's first action, filed August 9, 1971, was dismissed without prejudice. The action was refiled on October 29, 1973 and was assigned to Judge B. Mack Bryant. On November 5, 1973, plaintiff voluntarily dismissed the action without prejudice because she felt Judge Bryant was prejudiced against her case. The case was refiled November 30, 1973, and again assigned to Judge Bryant. Plaintiff filed various motions attempting to disqualify Bryant, all of which were overruled. An original action in mandamus was filed with this court to force assignment of the case to a different trial judge. We denied the motion on April 14, 1976, in *Berniece C. Lindquist v. Howard C. Kline,* No. 48,311. Judge Kline, the administrative judge, again assigned the case to Bryant after resolution of the mandamus proceeding. The case was tried during November and December, 1976. At the close of plaintiff's case the court directed a verdict for defendant Clark and for defendant Ayerst as to punitive damages. The case then went to the jury and a verdict was returned for Ayerst and Knapp.

The first issue raised on appeal is whether the administrative judge of the trial court committed reversible error in initially assigning this case to Judge B. Mack Bryant and refusing to reassign the case to another division for trial. Appellant contends the reassignment of the case to Judge Bryant after her voluntary dismissal of the first case was error. The administrative judge relied on Supreme Court Rule 120 (214 Kan. xxxviii), which stated:

"Any case dismissed and refiled shall be assigned to the judge of the same division to whom it was previously assigned."

The administrative judge followed the express language of the rule. There is no merit to this issue.

As a second part of this issue, appellant contends the administrative judge committed reversible error in overruling her motion for reassignment of the case with accompanying affidavit of prejudice, pursuant to K.S.A. 20-311d(*b*)(5), which provides:

"(b)  Grounds which may be alleged as provided in subsection (a) for change of judge are:

. . . .

"(5)  That the party filing the affidavit has cause to believe and does believe that on account of the personal bias, prejudice, or interest of the judge he cannot obtain a fair and impartial trial. Such affidavit shall state the facts and the reasons for the belief that bias, prejudice or an interest exists."

We held in *Hulme v. Woleslagel,* 208 Kan. 385, 493 P.2d 541 (1972), that upon the filing of an affidavit alleging the party has cause to believe and believes he cannot obtain a fair and impartial trial because of the personal bias, prejudice or interest of the judge with specific reasons, the court should assign the matter immediately to another judge for determination of the sufficiency of the affidavit. The affidavit must state facts and reasons, pertaining to the party or his attorney which, if true, give fair support for a well-grounded belief he will not obtain a fair trial. See *Oswald v. State,* 221 Kan. 625, 628-629, 561 P.2d 838 (1977); *State v. Griffin,* 3 Kan. App. 2d 443, 445, 596 P.2d 185 (1979). The question of the sufficiency of the affidavit is one of law for the court to determine but "[p]revious adverse rulings of a trial judge, although numerous and erroneous, where they are subject to review, are not ordinarily and alone sufficient to show such bias or prejudice as would disqualify him as a judge." *Sheldon v. Board of Education,* 134 Kan. 135, Syl. ¶ 3, 4 P.2d 430 (1931).

In the instant case, Judge Kline reviewed the affidavit, which primarily alleged previous adverse rulings of Judge Bryant against plaintiff's counsel. He found the evidence was insufficient to show bias or prejudice. The identical issue was presented to this court in the motion for writ of mandamus. We have again reviewed the issue and find it without merit.

Appellant next contends the trial court committed reversible error in excluding the admission of seven exhibits which are memos from Ayerst Laboratories concerning Fluothane.

Let us consider each exhibit separately. Exhibit 24 is Fluothane Memo 65-A, dated March 25, 1963, which originated with Ayerst Laboratories Sales Department and is addressed to all Ayerst salesmen. Under the heading "Fluothane" the memo begins as follows:

"During the current furor over 'Fluothane' we are intensely aware of your problems in meeting your anesthesiologists and surgeons face to face."

The memo goes on to explain that Fluothane is being unjustly accused of causing liver damage and that salesmen would be kept current of all studies regarding the anesthetic. The memo contains no admissions by the company. Ayerst objected to admission of the memo on the grounds of remoteness because Lindquist died in 1969 and the memo is dated 1963. The court sustained the objection.

Exhibit 27, dated June 13, 1963, is also from the sales department and was also excluded for remoteness. It instructs the salesmen to review Fluothane Memo No. 65-E and to "detail 'Fluothane' to one surgeon daily during July and August." The memo then instructs the salesmen regarding proper methods of presenting Fluothane to the surgeon. The memo states:

> "Once again, as mentioned in memo No. 65-E, do not voluntarily mention the drug warning letter. If the surgeon did not read it or has forgotten it, don't remind him. Give him a straightforward outline of the advantages of 'Fluothane' but be prepared to discuss the contents of the warning letter as outlined in 'Fluothane' Memo No. 65-E if he initiates such a discussion."

The memo offers the salesmen a sample sales pitch promoting the advantage of Fluothane over other anesthetics.

Exhibits 28 and 29 are from Keith Roberts of Ayerst Laboratories and are directed to a selected group of divisional, district and product managers and chemical research associates and to selected sales staff of the company. The memos dated May 31, 1961, advise them of a problem with a Dr. March who had been sponsored as a speaker on Fluothane, but it was difficult to determine whether he favored Fluothane or chloroform. Both exhibits were excluded because of remoteness. After the court ruled, the following colloquy occurred between attorney Michaud and Dr. Jewell:

> Q: (Mr. Michaud) "Did Ayerst Laboratories continue from that period of time in 1963 up until at least February 1969 to instruct their detailmen to not bring up the subject matter of Fluothane and its damage to the liver?
> A: (Dr. Jewell) "Not to my belief, no."

Exhibit 30, dated July 19, 1963, is also from Keith Roberts and is directed to Ayerst salesmen. The memo states that some anesthesiologists were concerned their continued use of Fluothane would expose them to legal complications. The memo went on to advise the salesmen how to meet and overcome these concerns and it closed by extolling the virtues of Fluothane. This exhibit was excluded as irrelevant and immaterial.

Exhibit 31, dated December 6, 1963, was sent out to Ayerst Lab salesmen. It is purely and simply a sales promotion pamphlet advising the salesmen of the reference books on Fluothane being delivered to doctors. This exhibit was excluded because of remoteness. A careful reading discloses doubtful relevancy.

Exhibit 63, dated January 4, 1971, has an agenda for a sales conference meeting attached. It is from B. A. Browne and is directed to all district managers. This exhibit was excluded for remoteness.

Appellant seeks to establish that from 1961 to 1971, Ayerst conducted a systematic and continuing plan of hiding and downplaying the dangers of Fluothane by giving inadequate warnings to doctors and hospitals using Fluothane, and by encouraging the use of Fluothane regardless of possible liver damage. Most of the exhibits are memos and directives to detailmen who are the lab representatives who contact the hospitals and doctors about the company's products. That such information is admissible in a products liability case is apparent from *Stevens v. Parke, Davis & Co.*, 9 Cal. 3d 51, 65, 107 Cal. Rptr. 45, 507 P.2d 653 (1973), where the court stated:

"Although the manufacturer or supplier of a prescription drug has a duty to adequately warn the medical profession of its dangerous properties or of facts which make it likely to be dangerous, an adequate warning to the profession may be eroded or even nullified by overpromotion of the drug through a vigorous sales program which may have the effect of persuading the prescribing doctor to disregard the warnings given."

In the instant case, however, the value of the excluded exhibits must be weighed with those that were admitted, numbered 22, 23, 25, 26, 33, 35 and 62. These exhibits represent sales promotion pamphlets from Ayerst to its salesmen and are dated from 1962 to 1969. The exhibits cover essentially identical subject matter as that contained in the excluded exhibits. All of the memos contain statements to the effect that the drug warning insert should not be discussed with the doctor unless the doctor brings it up and to downplay the warning and point out the advantages of Fluothane. All are typical promotional type material. The excluded exhibits are no more remote than are those which were admitted and considering the limited purpose for which they were offered, they should not have been excluded for remoteness. They are, however, repetitious and cumulative and present no new issues

for jury consideration. We hold the trial court did not commit reversible error in excluding exhibits 24, 27, 28, 29, 30, 31 and 63, although the reason for their exclusion was incorrect. See *Tucker v. Lower*, 200 Kan. 1, 6-7, 434 P.2d 320 (1967).

Next, appellant contends exhibits 72 and 73 were improperly excluded. The two exhibits represent a compilation in bound form of 49 adverse reaction reports regarding the use of Fluothane, with medical histories, hospital records and in some cases, post mortem reports. Appellant contends this information is vital to show Ayerst was on notice that Fluothane caused liver damage. The reports cover a period from 1961 to 1971. On this point, we held in *Robbins v. Alberto-Culver Co.*, 210 Kan. 147, 154-155, 499 P.2d 1080 (1972):

"Under the circumstances shown to be present here, we think the issue of foreseeability may not be determined as a question of law, but that a question of fact is presented which must be resolved. Evidence was presented on behalf of the defendant that over a period of some ten years the company had received ninety-nine complaints, the last one in 1970, which averages out as two complaints per million bottles sold during that period of time; that the complaints covered such problems as rash on head and ears, hair loss, breaking out of scalp, itching, skin trouble, allergic reaction and swollen eyes; and that the company does not have a written requirement that all distributors and retail stores selling Rinse Away report any complaints received. Whether the accumulation of complaints of allergic reactions up to the time of injury [citation omitted] was sufficient for the defendant to have reasonably apprehended that its product would harm an appreciable class of people is a matter for determination as a fact question."

For the purpose of showing notice, exhibits 72 and 73 are admissible but, as with the other excluded exhibits, did the exclusion harm the plaintiffs case? We think not. All of the other exhibits, including The National Halothane Study and much of the expert testimony, included adverse reaction reports, some of them duplications of those in the excluded exhibits. The jury had before it the full scope of plaintiff's case. Exhibits 72 and 73 were merely cumulative of the admitted evidence. The trial court's order excluding them was proper, but for the wrong reason. Any error is therefore harmless.

Appellant next contends the trial court committed reversible error in excluding certain testimony of Jack D. Webster, a detailman for Ayerst. Appellant called Webster and, in the course of direct examination, Webster was asked about notes he kept of conversations with Dr. Clark. The trial court sustained Ayerst's

objection to the introduction of the notes. The notes were purportedly made during conversations with Clark on December 3, 1971, and February 2, 1972, wherein Clark allegedly stated he was using more Fluothane now that "our" lawyers are taking care of the case and that he felt "secure because Ayerst has taken the ball."

Appellant claims the notes show Dr. Clark and Ayerst were in questionable collaboration on the issues of the lawsuit and the entries are admissible to show bias and prejudice of Dr. Clark for impeachment purposes. It should be recalled Mrs. Lindquist sought admission of this testimony in her case in chief in order to impeach Dr. Clark's testimony. He, however, had not offered any evidence to be impeached. There is no quarrel with the rule that evidence of bias or prejudice of a witness is relevant and may be shown on cross-examination or in rebuttal or by other witnesses or evidence. 81 Am. Jur. 2d, Witnesses § 547. Before admission of such evidence, however, a proper foundation must be laid. That foundation includes the requirement that the adverse witness sought to be impeached must be questioned *before* the attempted impeachment through the testimony of a second witness. See Annot., 87 A.L.R.2d 407, 411. Here, appellant was attempting to impeach the testimony of Clark through Webster before Clark had testified. We find the evidence was properly excluded.

Appellant next contends reversible error was committed by the exclusion of a portion of the testimony of Dr. Courtney Clark. One of the questions asked of Dr. Clark was:

"If information about the multiple use of Fluothane and its relation to liver damage has been given you even through the detailmen of Ayerst or the package insert, that is, if they had come to you and said in one form or another if you use this Fluothane on more than one occasion in a 30-day period, for example, it may cause death of liver cells and kill the patient, would you have given consideration to that fact in choosing your anesthetic for Mr. Lindquist?"

The trial court sustained an objection on the grounds the question was compound, speculative, multiple, included hypothetical facts not in evidence and sought conjecture by the witness. The question is highly speculative and the trial court did not abuse its discretion in sustaining an objection to it.

Appellant also claims the trial court committed reversible error in sustaining defendant's objection to the following question posed to Dr. Clark:

"Do you have an opinion as to whether the majority of the competent medical men today agree that there is a danger of liver damage from using Fluothane twice in a short period of time?"

An abuse of discretion must be found in order to reverse the trial court on the admission of expert testimony. *State v. Loudermilk,* 221 Kan. 157, 557 P.2d 1229 (1976). A trial court has wide discretion in determining whether it will receive opinion evidence. *State v. Hernandez,* 222 Kan. 175, 563 P.2d 474 (1977). The witness was qualified as an expert and, therefore, his opinions must have been consistent with K.S.A. 60-456(*b*). The question was overbroad, lacked proper foundation and called for an opinion based upon *current* thought, not medical opinion at the time Lindquist was given Fluothane. In addition, the question called for a conclusion based upon facts not personally known or made known to the witness at trial. The trial court properly excluded the testimony.

Appellant next contends that reversible error was committed in directing a verdict on the issue of punitive damages for defendant Ayerst. A verdict of actual damages is essential to a recovery of punitive damages. *Webber v. Patton,* 221 Kan. 79, 558 P.2d 130 (1976); *Dold v. Sherow,* 220 Kan. 350, 552 P.2d 945 (1976); *Young v. Hecht,* 3 Kan. App. 2d 510, 597 P.2d 682, *rev. denied* 226 Kan. 793 (1979). Punitive damages may be recovered "whenever the elements of fraud, malice, gross negligence, or oppression mingle in the controversy." *Nordstrom v. Miller,* 227 Kan. 59, Syl. ¶ 12, 605 P.2d 545 (1980); *Temmen v. Kent-Brown Chev. Co.* 227 Kan. 45, 605 P.2d 95 (1980). "[B]reach of a fiduciary duty may in some circumstances give rise to a claim for punitive damages." *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.,* 226 Kan. 70, 79, 596 P.2d 816 (1979). The jury returned a verdict for Ayerst on the issue of compensatory damages which precludes the recovery of punitive damages. We have held the trial court's exclusion of evidence was not improper and there is therefore no error in the jury verdict. It follows, in the absence of a verdict of actual damages, that this issue is without merit.

Appellant contends the trial court erred in directing a verdict for Courtney Clark at the close of plaintiff's evidence. This is a fact issue. Dr. Clark administered the anesthesia to Val Lindquist for his first operation. This cause of action arose after the second operation. Dr. Robert Knapp was the anesthesiologist for the

second surgery. The thrust of all of plaintiff's evidence was to the effect that Fluothane is dangerous when used a second time within a short period of time. There is no evidence Clark had responsibility for the second operation. The only possibility of a thread of connection is evidence that Clark and Knapp practiced in the same medical group. Such is not sufficient to establish a causal relationship between Clark and the death of Val Lindquist. There was no testimony showing Clark committed a wrongful act or neglected to perform a required act. This issue is without merit.

Appellant contends the trial court committed reversible error in overruling her motion for a directed verdict against Dr. Knapp based on the issue of informed consent. Appellant contends that as a matter of law, Lindquist was not fully informed as to the risks attendant with the use of Fluothane because Lindquist was under the influence of morphine and he was not told of the possibility of liver damage in multiple administrations of Fluothane. The record reveals Knapp testified he is certain he spoke with Lindquist just before the second operation. Knapp is certain he discussed significant risks involving the use of Fluothane but knows he did not discuss possible liver damage from use of Fluothane within a short period of time because the risk was too remote. At the time of Lindquist's operation, the package insert provided by Ayerst which accompanied Fluothane warned the anesthetic should not be given in multiple administrations when the patient suffers from jaundice or an unexplained high fever. Lindquist was running a fever, but it was the result of a staph infection. Expert testimony revealed the standard of practice in Wichita at that time did not discourage multiple doses of Fluothane. See *Chandler v. Neosho Memorial Hospital,* 223 Kan. 1, 3, 574 P.2d 136 (1977).

We have examined the medical material submitted with this case regarding the controversy surrounding Fluothane. It would appear Dr. Knapp followed standard medical procedure operating at that time in Wichita. It is also evident that with the knowledge and information available to him at that time, Dr. Knapp properly informed Lindquist of the significant risks involved in the use of the drug.

Appellant contends Lindquist could not have given an informed consent while under the influence of morphine. The record reveals Knapp discussed the risks of the anesthetic with

Lindquist sometime after 12:00 noon and before the surgery began at 1:13 p.m. Lindquist had been given morphine about noon. Knapp concedes the general practice in Wichita at that time was to visit the patient the night before the surgery and discuss the anesthetic to be used. The record reveals very little information regarding Lindquist's condition while under the influence of morphine, except to say that he was apprehensive about the surgery. In the case of *Funke v. Fieldman,* 212 Kan. 524, Syl. ¶ 3, 512 P.2d 539 (1973), we stated:

"In the absence of an emergency a physician or surgeon has a legal obligation to make a reasonable disclosure to his patient of the nature and probable consequences of the suggested or recommended treatment, and to make a reasonable disclosure of the dangers within his knowledge which are incident or possible in the treatment he proposes to administer in order that his patient will have a basis to make an intelligent informed consent to the proposed treatment. But the duty of the physician is limited to those disclosures which a reasonable medical practitioner would make under the same or similar circumstances."

This duty to disclose does not extend to a detailed explanation of all possibilities and risks connected with the drug. See *Funke v. Fieldman,* 212 Kan. at 531-532. In addition, we stated at syllabus ¶ 9:

"In the trial of a malpractice action wherein the plaintiff claimed inadequate disclosure of risk information by the physician, the patient has the burden of going forward with evidence tending to establish a prima facie cause of action, and ultimately the burden of proof."

Appellant contends because Lindquist was under the influence of morphine, he was hampered in his ability to give an informed consent to the use of Fluothane during the surgery. We have examined the record and find no evidence propounded by appellant which would indicate Lindquist was under any difficulty giving his consent to the use of the anesthetic. In the absence of evidence to the contrary we hold Dr. Knapp sufficiently informed Lindquist regarding the risks of using Fluothane during this surgical procedure.

Appellant contends the trial court erred in giving its instructions to the jury and in refusing to give the instructions requested by appellant. In her brief, appellant concentrates on eight of the instructions she requested at trial. She contends PIK Civ. 2.24 should have been given at trial. This instruction provides that a jury may distrust or reject testimony of a witness it believes has willfully testified falsely. The comments following the instruc-

tion at page 53 state: "To warrant giving this instruction there must be some basis in evidence to show false swearing. This instruction should not be given in the average case." The instruction is not included in the more current PIK Civ. 2d. Appellant contends the various contradictions in the testimonies of Drs. Jewell, Knapp, Clark and Cohen prove the instruction should have been given. Although there are several inconsistencies in the testimonies of these men, those inconsistencies do not rise to direct falsehoods. The instruction was not warranted.

Appellant contends the court's gravest error is the failure to give her requested instructions 13 through 16. These instructions reflect different versions of the doctrine of strict liability in tort. Appellee Ayerst contends instructions 16, 17 and 18 given by the court properly reflect the doctrine of strict liability. We have carefully examined the requested instructions and the instructions that were given and find the jury was properly instructed regarding the doctrine of strict liability expressed in Restatement (Second) of Torts § 402A (1965). The jury was instructed to find Ayerst liable provided they found the drug was in a defective condition and unreasonably dangerous to persons who might be expected to use it, where that defect caused or contributed to the death of Lindquist. The defective condition is the failure of Ayerst to properly warn and instruct the medical profession with respect to the use and possible consequences of the use of Fluothane.

Appellant also contends her instruction 19 regarding the law of negligence should have been given; however, we find instructions numbered 19, 20, 21 and 23 given by the court were sufficient to properly inform the jury regarding the issue of negligence.

Plaintiff's requested instruction 20 poses a different wrinkle. The instruction is PIK Civ. 13.04, which states:

"The manufacturer of a product is required to make such tests for defects therein as are reasonably necessary to assure safety of the product manufactured. Failure to do so constitutes negligence."

No corresponding instruction regarding the duty to test was given by the court. The "Notes on Use" following the instruction state it should be used in appropriate cases and should follow the general instruction on negligence.

With respect to a manufacturer's duty to test its product, we

note with approval the following statement from 1 Hursh and Bailey, American Law of Products Liability 2d § 2:29, p. 214 (1974):

"The rule is that a manufacturer has a duty to make such tests and inspections, during and after the process of manufacture, as should be recognized as being reasonably necessary to secure the production of a safe product; and a manufacturer who negligently fails to use reasonable care in making such tests and inspections, and thereby produces a defective article which causes damage while being put to an ordinary, anticipated use, is liable for such damage."

In addition, we note at page 217 that "the plaintiff cannot succeed where he fails to allege or prove that tests or inspections would have been effective . . . ." See 6 A.L.R.3d 91; 63 Am. Jur. 2d, Products Liability §§ 35-37, pp. 45-47. In support of her argument that PIK Civ. 13.04 should have been given, appellant cites the testimony of a Dr. Herbert Wendel, a physician trained in internal medicine and an expert in pharmacology. He testified the chemical properties of chloroform and Fluothane are closely related and that liver damage was a serious side effect of chloroform. Dr. Wendel believes when Ayerst Laboratories marketed their drug in 1958, they should have paid particular attention and thoroughly investigated whether Fluothane could produce similar effects on the liver. Appellant contends Dr. Wendel's testimony proves that proper testing by Ayerst might have revealed whether Fluothane could produce liver damage. Therefore, she argues the instruction should have been given. We cannot say this evidence alone is sufficient to show such tests would have produced more conclusive results regarding repeated use of Fluothane within short periods of time. It follows therefore, that the trial court did not err in denying the request for the instruction.

Appellant's final contention goes to the trial court's failure to instruct on implied warranty of fitness for a particular purpose. She requested PIK Civ. 13.10, which states:

"When a seller at the time of contracting for a sale has reason to know of any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is an implied warranty that the goods shall be fit for such purpose.

"A seller who breaches this warranty is liable to the buyer of such goods who sustains injury as a result."

The instruction, taken from K.S.A. 84-2-315, contemplates a showing of reliance by the buyer on skill or knowledge possessed by the seller and a showing of a particular purpose, differing from

an ordinary purpose, for which the goods are used. See generally K.S.A. 84-2-315, Official UCC Comment. Appellant offers no evidence showing that PIK Civ. 13.10 is applicable to the facts of this case. We are unable to find the trial court erred in excluding the instruction.

The judgment is affirmed.